UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                               :
                                         Docket #16mj2541
 UNITED STATES OF AMERICA,            : 1:16-mj-02451-UA

                    Plaintiff,       :

   - against -                       :

 ALEX LICHTENSTEIN,                  : New York, New York
                                       April 18, 2016
                    Defendant.       :

------------------------------------ :

                    PROCEEDINGS BEFORE
                 THE HONORABLE HENRY PITMAN
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                          SOUTHERN DISTRICT OF NEW YORK
                          BY:  KAN NAWADAY, ESQ.
                               MARTIN BELL, ESQ.
                               RUSSELL CAPONE, ESQ.
                          One Saint Andrew's Plaza
                          New York, New York  10007


For Defendant:            MEISSNER, KLEINBERG & FINKEL, LLP
                          BY:  RICHARD A. FINKEL, ESQ.
                          270 Madison Avenue, Ste. 1000
                          New York, New York 10016




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

3

THE CLERK:  United States against Alex
Lichtenstein.  Counsel, please state your name for the
record.

MR. KAN NAWADAY:  Good afternoon, Your Honor, Kan
Nawaday, Martin Bell and Russell Capone Neff for the
government.  Joining us is Special Agent Joseph Downs of
the FBI.

MR. RICHARD A. FINKEL:  Good afternoon, Your
Honor, Richard A. Finkel of 270 Madison Avenue for the
defendant.

THE COURT:  Okay, thank you.  All right, one
preliminary matter, all attorneys in well of the court who
have a cell phone are directed to turn the cell phone off
at this time.  Don't put it on vibrate, don't put it on
silent, but you are directed to turn it off so that we can
all give our undivided attention to the matter at hand.

Okay, Mr. Lichtenstein, my name is Magistrate
Judge Pitman, the purpose of this proceeding is to inform
you of certain rights that you have, to inform you of the
charges against you, to consider whether counsel should be
appointed for you, and to decided under what conditions, if
any, you should be released.  Can I have the date and time
of arrest, please?

MR. NAWADAY:  The defendant was arrested at

```
 1                                              4
 2   approximately 9:30 a.m. yesterday, he was transported down
 3   to the Metropolitan Corrections Center and appears before
 4   Your Honor today.
 5             THE COURT:   Okay, thank you.  Mr. Lichtenstein,
 6   you have the right to remain silent. You are not required
 7   to make any statements. Even if you have made any
 8   statements to the authorities you need not make any further
 9   statements.  Anything that you do say can be used against
10   you.  You have the right to be released either
11   conditionally or unconditionally pending trial unless I
12   find that there are no conditions or combination of
13   conditions that would reasonably assure your presence in
14   court and the safety of the community.  You have the right
15   to be represented by counsel during all court proceedings
16   including this one, and during all questioning by the
17   authorities.  If you cannot afford an attorney I will
18   appoint one to represent you.  It is my understanding that
19   you're currently represented by retained counsel. I want to
20   advice you that the right to the appointment of counsel is
21   a right that you possess throughout these proceedings.  If
22   at any time you're unable to continue with retained counsel
23   because you run out of money, you can apply to the Court at
24   any time for the appointment of counsel.  Do you understand
25   that?
```

1                                                                        5

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay, thank you.  All right, Mr.

4    Hampton, let me please ask you to place the complaint

5    before Special Agent Downs.  All right, Special Agent

6    Downs, is that your signature on the complaint?

7              SPECIAL AGENT DOWNS:  It is, Your Honor.

8              THE COURT:  Okay, please raise your right hand. Do

9    you swear that the statements in that complaint are true,

10   so help you God?

11             SPECIAL AGENT DOWNS:  I do.

12             THE COURT:  Thank you, please be seated.  Mr.

13   Lichtenstein, you're charged in a complaint in two counts,

14   count one charges you with violating Title 18, United

15   States Code Section 666.  In count one it's alleged that

16   you offered bribes to members of the New York City Police

17   Department in order to obtain gun licenses for individuals

18   who had paid you fees.  Count two charges you with

19   violating Title 18 United States Code Section 371.  That

20   statute makes it a crime to conspire or to agree with

21   others to violate the laws of the United States.  In count

22   two it's alleged that you conspired or agreed with others

23   to commit the offense charged in count one, namely bribery.

24   Mr. Finkel, have you received a copy of the complaint?

25             MR. FINKEL:  I have, Your Honor.

THE COURT:  Have you reviewed it with your client?

MR. FINKEL:  Briefly, yes, before this proceeding.
Yes, Your Honor.

THE COURT:  Okay, and do you waive its reading?

MR. FINKEL:  Yes, we waive the reading.

THE COURT:  Thank you.  Mr. Lichtenstein, you have
the right to a preliminary hearing at which the government
will have the burden of establishing that there is probable
cause to believe that the crimes charged in the complaint
have been committed and that you're the person who
committed them.  If probable cause is not established,
you'll be released from the charges, if probable cause is
established the government will then have the right to
proceed to trial against you.  If you're in custody you
have the right to a preliminary hearing within 14 days, if
you're not in custody you have the right to a preliminary
hearing within 21 days; however, no preliminary hearing
will be held if either the grand jury indicts you or if the
government files an accusatory instrument called an
information prior to the date set for the preliminary
hearing. I'll set the preliminary hearing date after I
determine bail.  I will hear from the government first,
then defense counsel.

MR. NAWADAY:  Your Honor, the government seeks

detention based on risk of flight and danger to the

community.  Your Honor has a very detailed criminal

complaint before you.  The defendant is charged with very,

very serious offenses and very serious conduct.  He was no

less than an arms dealer for the communities of New York

City.  He was obtaining through bribery, through unlawful

means, licenses for his clients to bear arms for guns that

should not have been, we allege, on the streets.  On the

strength of the case, our strength is very strong, there's

a very detailed complaint before Your Honor, but just to

walk through some of those facts in the complaint.  First

off, just last week this defendant was recorded trying to

bring an NYPD officer to obtain gun licenses for his

clients and offered $6,000 per gun.  He also bragged about

the fact that just in the last year through his connections

at the NYPD, the defendant had obtained 150 such licenses.

Now the danger attended to that conduct of using bribery

and unlawful means and connections with NYPD personnel to

(inaudible) favor, to get guns for his clients, can't be

overstated.  We set forth in the complaint as an example

that there was at least one license for a gun that it

appears the defendant helped obtain, he, in fact, paid for

the license fee, where it looks like a license was obtained

for an individual who on its face appears should not have

8

been given a license.  And that individual is referred to
as license holder one in paragraph 16 of the complaint.
That license holder it appears had a history of domestic
violence and --

          THE COURT:  Well, I'm looking at the complaint. I
mean the complaint, I'm looking at paragraph 16(B), the
individual had been the subject of four domestic violence
complaints including one in which he was accused of
threatening to kill someone.  Do we know what the
disposition of those complaints were?

          MR. NAWADAY:  We do not, Your Honor.

          THE COURT:  Okay.

          MR. NAWADAY:  So there's already --

          THE COURT:  Do we know, I'm sorry to interrupt
you, do we know if even a criminal proceeding was commenced
against license holder one as a result of the domestic
violence complaints?

          MR. NAWADAY:  As far as I know, we do not, Your
Honor, we are still investigating that.

          THE COURT:  All right.  So, all right, go ahead.

          MR. NAWADAY:  So, Your Honor, the evidence is very
strong the defendant was engaging in dangerous conduct in
obtaining seemingly lawful gun licenses for people who
frankly we don't necessarily know and don't necessarily

1

2  believe should have gotten gun licenses. In addition to

3  that, the defendant is facing serious time, there is a

4  maximum penalty of 10 years on count one, and we concede,

5  Your Honor, that the defendant has no criminal history and

6  by all appearances he has many connections to the

7  community.  That said, the defendant does have a somewhat

8  significant net worth and could have the means of fleeing

9  in light of these serious charges that he faces.

10         THE COURT:  All right, let me just ask you a few

11  questions.  I mean to detain, we agree neither count is a

12  presumption count, agreed?

13         MR. NAWADAY:  That's correct, Judge.

14         THE COURT:  Okay.  To detain an individual on the

15  grounds of dangerousness, the dangerousness needs to be

16  shown by clear and convincing evidence.  Is there any

17  reason to believe that the licensees for whom Mr.

18  Lichtenstein allegedly obtained licenses have used the guns

19  illegally?

20         MR. NAWADAY:  Not as I stand here now, Your Honor.

21         THE COURT:  And let me ask Pretrial, let me ask

22  counsel and/or Pretrial, on page 2 of the Pretrial Services

23  report, in the box marked monthly income it indicates a

24  salary of $80,000, is that monthly or is that annually?

25         MR. FINKEL:  Annually, Your Honor.

```
 1                                                      10
 2            FEMALE VOICE:  We believe annually, Your Honor.
 3            THE COURT:  Okay.  Just I'm going to hear from you
 4   in  one second, Mr. Finkel.
 5            MR. FINKEL:  Yes, Your Honor.
 6            THE COURT:  I've got a few more questions for the
 7   government. Why could not bail conditions be set to
 8   mitigate the risk of nonappearance, Mr. Nawaday?
 9            MR. NAWADAY:  Your Honor, I think our issue is the
10   seriousness of the offense and the danger to the public.
11            THE COURT:  I'm sorry, I just didn't hear what you
12   said.
13            MR. NAWADAY:  The danger to the public because in
14   our view the defendant has been a danger to the public by
15   expediting licenses through unlawful means which in all
16   likelihood should not have been issued by the NYPD.  So we
17   understand that Your Honor might have a different view.
18            THE COURT:  No, I mean my understanding is some
19   individuals possess firearms and never use them, some
20   possess firearms and use them for terrible, horrible
21   things, some people just want them for I don't know what
22   reason, but I'm trying to understand, you're making a
23   dangerousness argument here and I'm trying to understand
24   whether or not the individuals for whom the defendant
25   allegedly obtained licenses have used them in a dangerous
```

```
 1                                                     11
 2  or illegal manner.  Or maybe they're individuals who just
 3  want them for the sake of possessing them, I don't know.
 4  I'm trying to find out if there's some meat on your
 5  dangerousness argument.
 6           MR. NAWADAY:  Your Honor, I think the response we
 7  have is at the end of the day, because of what the
 8  defendant did as we allege it, the NYPD wasn't able to make
 9  and do the actual background investigations it should have
10  done.  Because these licenses and these license
11  applications were sped along in a way they should not have
12  been sped along.  That's our issue. And also when the
13  defendant was arrested he did have in his wallet what
14  appeared to be an NYPD liaison badge and as far as we are
15  aware he's not an NYPD liaison, that is document that he
16  should not have, and I think that also lends to the fact
17  that he would have that kind of document with him which
18  doesn't appear to be a valid document.
19           THE COURT:  I understand that but how does that
20  support an inference of either dangerousness or risk of
21  nonappearance, that he had a bogus police badge?
22           MR. NAWADAY:  Well, exactly, a bogus police badge
23  is like a fake ID, is always I think you can draw an
24  inference that somebody carries a fake ID and is willing to
25  carry a fake ID to show that he has a relationship with the
```

1                                                                  12

2  police does bear a chance and a possibility of a risk of

3  flight. That person --

4          THE COURT:  Well there's always a possibility of a

5  risk of flight. I mean I'm not sure how the bogus police

6  badge demonstrates a risk of nonappearance.

7          MR. NAWADAY:  In our view it does because it shows

8  somebody who is willing and even by his conduct to use his

9  connection or the appearance of connections to law

10 enforcement in order to get what he wants.  So that is I

11 think what the possession of the bogus NYPD badge shows.

12         THE COURT:  All right, anything else you want to

13 tell me? No, Your Honor, but to the extent that Your Honor

14 is considering a bail package for the defendant, we would

15 request that there be, it be as stringent as possible that

16 there be property to secure his reappearance and also that

17 there be conditions limiting and precluding the defendant

18 from working to obtain gun and firearms permits for his

19 clients going forward. Or, in fact, speaking to them or

20 contact with the firearms division of the NYPD.

21         THE COURT:  All right.  Mr. Finkel.

22         MR. FINKEL:  Yes, Your Honor, thank you.  Your

23 Honor, may I start off by saying that we believe that the

24 facts that we will set before Your Honor disprove the

25 government's claim that he is either a risk of flight or a

danger to the community.  First of all, a little bit of

background, my client is 44 years old, he was born in the

United States, an American citizen, of course, he has never

been arrested in 44 years.  When he was arrested this

morning, or yesterday morning, actually before he was

arrested, the FBI took two guns that he has licenses for,

he also has a shotgun which he still has in his home and we

would, of course, be willing to surrender that promptly,

Your Honor.  In addition to the lack of criminal record,

Your Honor, he is married, his wife is in the courtroom, he

has three children, three sons, they are in the courtroom,

two of his sons are married.  One married son lives in

Lakewood, New Jersey, which is part of the metropolitan

area, another son is married and lives in Brooklyn, the

third son is a teenager, he's 15 going on 16, he lives with

his mother and my client in their home in Rockland County,

Pomona, New York.  This is a home that they purchased less

than a year ago, in August of last year.  Your Honor, we

would be more than willing to post that property as part of

the bail package.  He also has ten brothers and sisters, my

client is one of eleven children, all of his brothers and

sisters live in the New York City metropolitan area, all of

them live in the State of New York.  His parents are

elderly but they live, they are, thank God, alive and live

14

in Brooklyn.  My client has no ties outside of the United

States, no family outside of the United States, he has not

traveled outside of the United States in at least five

years and at that time he made a trip to Israel for

religious purposes.

          In addition, my client has been very active in the

orthodox community, particularly in Brooklyn, because until

August of last year, he resided for his whole life in

Brooklyn.  He's active with a large number of community

organizations, both as a fund raiser and fund contributor.

As Your Honor can readily say by the people in the

courtroom, there are a very large number of people here,

many are family, the balance are friends. They are here to

show Your Honor visibly that my client has very strong ties

to the New York community. These people are here because

they know my client, they received assistance from my

client, they are friendly and co-worshipers with my client.

In addition, among the people here is an individual by the

name of Jacob Rosenberg. Mr. Rosenberg knows my client

because they went to grade school, yeshiva, together.  Mr.

Rosenberg is a member of a family business in Brooklyn, in

Williamsburg, a lumberyard which is actually owned by Mr.

Rosenberg's father.  Mr. Rosenberg is a manager of that

business.  Mr. Rosenberg owns a house on East 4th Street in

15

Brooklyn.  That house is worth approximately $1.5 million,
possibly more.  There is a mortgage of a approximately
$600,000 on that property, meaning the equity is somewhere
probably in excess of $900,000.  Mr. Rosenberg has for his
whole life essentially had strong ties to my client, has no
concern whatsoever about my client fleeing the
jurisdiction, and is willing to post his property as
security as part of a bail package. So we are offering the
Court that property as well as my client's property.
They're both residences of the sureties, Your Honor, which,
of course, carries tremendous persuasive meaning.

          In addition, in terms of danger to the community,
my client's never been arrested, he's never been accused of
any crime, certainly not of any violent crime, he poses no
risk of danger to the community. He's had two licensed guns
and a shotgun, there is no indication and we would add
there is no evidence and could be no evidence that my
client has ever used those weapons improperly, never mind
unlawfully.  He has no risk to the community.  Certainly,
just the mere pendency of these charges would prohibit my
client for becoming involved in any attempt to obtain a
license on behalf of himself or anyone from the police
department, and, of course, we would agree to certify to
the Court that he would make no such efforts, whatsoever,

1                                                                16

2   going forward.

3          So what the government is essentially saying, that

4   my client was, past tense, was a risk because he

5   facilitated licenses for some people and maybe some of

6   them, and they only point to one, would not have otherwise

7   gotten a license, maybe.  My client has, therefore, no risk

8   of danger to the community, he's not going to injure

9   anyone, he's not going to hurt anyone, he's a family man

10  and a community minded man that's charged with bribery. He

11  has no risk of flight, his whole family is here, all his

12  friends are here, his entire life is here. He looks forward

13  to celebrating the upcoming religious holiday of Passover

14  with his friends and relatives in his home, and that's what

15  we'd ask the Court to allow him to do.

16          If Your Honor wants some additional security in

17  terms of conditions, we'd be more than willing to agree to

18  additional conditions of security.  But in all candor, I

19  most respectfully submit the bail package of a house worth

20  equity, approximately $900,000, and my client's own home

21  worth in excess of $150,000, as much as $200,000 or more,

22  in other words, a million dollar package in residential

23  property is certainly sufficient given the nature of who my

24  client really is, Your Honor.

25          THE COURT:  All right.  Does the government want a

brief response?

MR. NAWADAY:  No, Your Honor.

THE COURT:  Okay.  This is not -- this is not a presumption case, there are certain offenses that carry a presumption that detention is the appropriate resolution of the bail issue, this is not one of them.  The government seeks detention on two grounds, dangerousness and risk of nonadherence. The case law provides that to detain an individual on the grounds of dangerousness, the dangerousness needs to be shown by clear and convincing evidence, and I don't think dangerousness has been shown here.  The proliferation of firearms in general is regarded by some as dangerous, there are political ramifications that I really don't want to get involved in. but there is no evidence here that either Mr. Lichtenstein has used a firearm for any improper or illegal purpose, nor is there any evidence at this point that any of the individuals that Mr. Lichtenstein allegedly helped get licenses used a firearm for any improper purpose. So I don't think -- I think the government's characterization of him as an arms dealer is somewhat hyperbolic and I don't think that, certainly dangerousness has not been shown by clear and convincing evidence.

With respect to the risk of nonappearance, I also

1

2 think that there are bail conditions that can be set to

3 mitigate the risk of nonappearance.  Mr. Finkel makes a

4 number of good points that Mr. Lichtenstein has no criminal

5 record, he is born in New York City, he's a lifelong

6 resident of the metropolitan area, he has one trip overseas

7 approximately five years ago.  He has extremely substantial

8 family ties to the community, his parents and ten siblings,

9 and it also appears he has ties to the community beyond his

10 immediate family.  The risk of nonappearance I think is not

11 so great -- let me rephrase that.  In every case there is

12 some risk of nonappearance, but in this case I don't think

13 the risk of nonappearance is so great that there are no

14 bail conditions that could be set that would reasonably

15 mitigate that risk.

16          All right, I'm going to set bail as follows, a

17 $500,000 personal recognizance bond secured -- Mr. Finkel,

18 Mr. Rosenberg is willing to cosign the bond and put up his

19 house?

20          MR. FINKEL:  Yes, and he's in the courtroom now

21 and we can accomplish that this afternoon, Your Honor.

22          THE COURT:  All right.  I'm going to direct that a

23 $500,000 personal recognizance bond cosigned by Mr. Jacob

24 Rosenberg and what are the names of the two married sons?

25          MR. FINKEL:  The two married sons, the names?

```
 1                                                          19

 2              THE COURT:  Yes.

 3              MR. FINKEL:  Kevin and Jacob, Your Honor.

 4              THE COURT:  Okay.  So it's going to be cosigned by

 5   Jacob Rosenberg, Kevin, I'm sorry the second son?

 6              MR. FINKEL:  Kevin and Jacob, Your Honor.

 7              THE COURT:  Kevin and Jacob Lichtenstein.  And

 8   secured by defendant's residence and Mr. Rosenberg's

 9   residence.  Travel limited to the Southern and Eastern

10   Districts of New York.

11              MR. FINKEL:  I'm sorry?

12              THE COURT:  Travel limited to the Southern and

13   Eastern Districts of New York, that's about halfway up to

14   Albany and all of Long Island and Staten Island, Brooklyn,

15   Queens.  Surrender of all travel documents, no new

16   applications.  Regular Pretrial supervision.  Surrender of

17   all firearms, including the shotguns -- shotgun, I guess.

18   Defendant to refrain from excessive use of alcohol.

19   Defendant not to possess any firearms.  Mr. Nawaday, I

20   think there was some condition you were requesting about

21   contact with certain individuals, just can you repeat what

22   that request was?

23              MR. NAWADAY:  To refrain from contact with

24   personnel of the NYPD firearms division, as well as the

25   persons who the defendant has facilitated the issuance of
```

```
 1                                                      20
 2  firearms licenses for --
 3           THE COURT:  Presumptively he hasn't facilitated
 4  anybody in getting a license. Isn't there a presumption of
 5  innocence?
 6           MR. NAWADAY:  To (inaudible).
 7           THE COURT:  With whom?
 8           MR. NAWADAY:  With anyone who approaches him to
 9  seek a firearms license, Your Honor, or anybody who has
10  previously approached him to receive, his assistance to
11  receive firearms licenses.
12           THE COURT:  I'm going just defendant not to have
13  contact with the NYPD licensing division.  An order that
14  says not to have contact with you know who I don't think is
15  enforceable. All right.  So the bail conditions are
16  $500,000 PRB cosigned by Jacob Rosenberg and Kevin and
17  Jacob Lichtenstein and secured by the defendant's residence
18  and Mr. Rosenberg's residence.  Travel restricted to the
19  Southern and Eastern Districts of New York, surrender of
20  all travel documents and no new applications.  Regular
21  Pretrial supervision.  Defendant to surrender all firearms,
22  to refrain from the excessive use of alcohol.  Defendant
23  not to possess any firearms and defendant not to have any
24  contact with the NYPD licensing division. The defendant can
25  be released when defendant and cosigners execute the bond.
```

```
 1                                                    21
 2  They're all in court, Mr. Finkel?

 3           MR. FINKEL:  Yes, they are.

 4           THE COURT:  Okay.  All right, the remaining

 5  conditions to be met, the property to be posted by a week

 6  from today which is going to be the 25th.  All right, Mr.

 7  Lichtenstein, I've set bail for you and you're going to be

 8  released this afternoon, you're going to go home this

 9  afternoon.  I want to advise you that if you fail to appear

10  in court whenever you're required to or if you violate any

11  other condition of your release, you and your cosigners

12  will owe the government $500,000, there will be a lien on

13  your property and Mr. Rosenberg's property, a warrant will

14  issue for your arrest and you could be charged with the

15  offense of bail jumping. You could be separately prosecuted

16  and separately sentenced for bail jumping even if the

17  conspiracy and bribery charges against you were dismissed.

18  Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Okay.  Mr. Finkel, you wanted to say

21  something?

22           MR. FINKEL:  Yes, one additional request, can you

23  add to the travel restrictions New Jersey so he can visit

24  his son and daughter-in-law in Lakewood, New Jersey, Your

25  Honor?
```

```
 1                                                    22
 2              THE COURT:  Yes.
 3              MR. FINKEL:  Thank you.
 4              THE COURT:  All right, so the travel limits are
 5   the Southern and Eastern Districts of New York and the
 6   District of New Jersey which is the entire state.  Is there
 7   anything else, Mr. Finkel?
 8              MR. FINKEL:  Thank you very much, no, Your Honor.
 9              THE COURT:  Okay.  Preliminary hearing date 21 or
10   30 days?  Mr. Finkel?
11              MR. FINKEL:  I'm sorry, when was that?
12              THE COURT:  The preliminary hearing date which in
13   this district really just operates as a control date, 21
14   days or 30 days?
15              MR. FINKEL:  We'll take 21, Your Honor.
16              THE COURT:  Twenty-one, so that's going to be May
17   9$^{th}$.    Okay, anything else from either side?
18              MR. NAWADAY:  Not from the government.
19              THE COURT:  Mr. Finkel, anything else?
20              MR. FINKEL:  That's it, thank you, Your Honor.
21              THE COURT:  Thank you.
22                  (Whereupon the matter is adjourned.)
23
24
25
```

```
 1                                                        23

 2                     C E R T I F I C A T E

 3

 4          I, Carole Ludwig, certify that the foregoing

 5  transcript of proceedings in the United States District Court,

 6  Southern District of New York, United States of America v.

 7  Alex Lichtenstein, Docket #16mj2541, was prepared using PC-

 8  based transcription software and is a true and accurate record

 9  of the proceedings.

10

11

12

13

14  Signature_____

15

16  Date:  April 29, 2016

17

18

19

20

21

22

23

24

25
```